## Hatton et al. v. Sipple.

(Decided June 25, 1937.)

MARCUS C. REDWINE for appellants.
JOHN D. ATKINSON and BEV. WHITE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 6, 1935, the appellants, as plaintiffs below, filed this action in the Powell circuit court against appellee and defendant below, Harry B. Sipple. In their petition they sought to recover judgment against him for the sum of $500 and the cancellation of an oil and gas lease that plaintiffs gave C. E. Townsend on May 6, 1933, which he thereafter assigned and transferred to defendant. The lease covered a farm of 50 acres owned by plaintiffs in Powell county and reserved to them ⅛ of the oil produced by the lessee from the leased land; while its third clause or paragraph says: "Should gas be found in paying quantities the lessee agrees to pay ⅛ net proceeds or market value at well each year for the products of such well while the same is being sold off the premises." The right of the lessors to use free gas for their dwelling located on the tract was reserved.

Before Townsend assigned the lease to Sipple, he drilled a well on the leased premises, from which gas was found but no oil. He then cased in and capped the well and while it was in that condition he sold and transferred his rights to defendant, Sipple. The latter, however, did not attempt to market the gas until some time in August, 1934, after he had purchased the leasehold rights from Townsend. The petition alleged (though not specifying any definite quantity) that defendant from the time he began using the gas had taken enough from the well for the royalty as stipulated in the lease to amount to $500 at the time of the filing of the petition which, it will be observed, was less than one year from the time defendant began using the gas and which did not represent a full year's royalty if the amount sought to be recovered for a fractional part of a year was correct. The ground for cancellation as alleged in

the original petition was the failure of defendant to further develop the premises over and above the one well that had been drilled thereon. An amended petition sought to increase the amount of recovery so as to include the intervening time from the date of the filing of the petition, and it also incorporated an additional ground for cancellation of the lease, which was, that defendant had not drilled an offset well which plaintiffs averred was necessary to preserve their rights.

The material grounds for all of the relief sought by plaintiffs' petition, and amended petitions, were put in issue by defensive pleadings and proof was taken by deposition, although the caption of the petition did not designate it as being one "in equity." Nevertheless, it was treated as such and the cause was finally submitted to the court without a jury. Therefore, the appeal will be disposed of as though the case was an equitable one, and especially so when it sought equitable relief.

Before final submission of the cause, and while the action was pending in the trial court, defendant began preparations to drill another well as an offset to one upon an adjoining tract known as the "Means" land and also for the purpose of furnishing an additional supply of gas to meet the necessities of defendant in his two enterprises of burning brick in the town of Stanton, and operating a gas distributing plant in that town for use of its inhabitants. Those two demands were the only ones for the use of gas in the vicinity of the leased premises—there being no competing furnisher or user of gas in that vicinity except another corporation, but which obtained its supply of gas from wells of its own. When defendant began to move drilling machinery on to the leased premises to drill the second well, as indicated, he was forbidden to do so by plaintiffs. Defendant thereupon filed an amended answer setting forth the facts, followed by a prayer for an injunction restraining plaintiffs from interfering with him and his employees in drilling the second well. He made that pleading a cross-petition against plaintiffs. On final submission the relief sought by plaintiffs in their petition as amended, as well as the relief sought by defendant in his amended answer, and cross-petition were considered by the court and it rendered the judgment appealed from. It gave plaintiffs a money judgment for the accrued royalty for the gas consumed from the Townsend well by the defendant between the time that he ac-

quired the lease and the date of rendering the judgment, at the rate of $112 per annum; but dismissed the petition in so far as it sought a cancellation of the lease, and sustained defendant's motion for an injunction as prayed for in his amended answer and cross-petition.

It will be observed that the amount adjudged by the court in favor of plaintiffs covered a period of one year and nine months from and after August 18, 1934, when the second year's rent would not be due until August 18, 1936. However, defendant makes no complaint of the premature recovery of that fractional part of the second year for which recovery was sought and allowed. From the judgment as so rendered, plaintiffs prosecute this appeal, insisting through their counsel (1) that the court erred in adjudging too small an amount of royalty due plaintiffs for the gas that defendant had marketed from the well or by consuming it himself; (2) that the court erred in refusing to cancel the lease upon the grounds urged therefor; and (3) it erred in granting the injunction sought by plaintiff in his amended answer and cross-petition. In the argument of counsel on various phases of the case, he refers to many of our former opinions which contain general statements of the law, but which have no application to the facts of this case, since the opinions relied on were based upon facts and circumstances wholly absent from those contained in this record. We will now proceed to dispose of the alleged errors relied on in the order hereinbefore named.

1. All of the direct evidence in the case sustains the finding of the court that defendant neither marketed nor consumed any greater amount of gas from the Townsend well than that for which judgment was rendered. It is true that Townsend and other witnesses testified that when the well was first completed in 1933 it had a pressure (named by witnesses) showing a flow of gas in excess of that allowed by the trial court; but later—and after defendant commenced taking gas from the well—Townsend made readings on the meter installed at the mouth of the well and they, together with others covering different periods, formed the basis of the court's judgment and which we think was the proper criterion. We are asked, however, by counsel for plaintiffs to discard those readings and to infer from the pressure indicated at the time the well was completed that it produced that same amount of gas.

from and after the time defendant attempted to use it. That contention is also sought to be sustained—not by experts who testified as witnesses in the case—but from letters written by experts to the witness who did testify in the cause and who exhibited such letters. It is too clear to require argument to establish that such writings or communications from such alleged expert witnesses are incompetent, on the ground that what they said therein was bald hearsay and wholly inadmissible. We are, therefore, not prepared to say that the court erroneously fixed the amount of royalty that plaintiffs were entitled to recover up to the date of rendering the judgment.

2. The evidence in the case showed that the section of the country, wherein plaintiffs' farm is located, is remote from facilities for transporting gas and from available markets therefor. Defendant, as hereinbefore stated, operates a plant for manufacturing brick located in Stanton some miles from the leased farm. He also operates a gas distributing plant for domestic purposes in the town of Stanton and his use of gas for the two purposes with other wells he owned is the only demand for it in that territory. In the circumstances, it was testified by plaintiff and other witnesses that the gas was worth only 8 cents per thousand cubic feet at the well, which was the place where its market value should be estimated for royalty purposes, according to the terms of the lease. The condition of the market at that place, and the demand for gas at the time the action was filed, were such that the drilling of a second well would be useless and that defendant's failure to do so as long as the conditions and circumstances remained the same did not furnish grounds for a cancellation of the lease because of nondevelopment and the court did not err in so holding. If the circumstances and conditions should change in the future, and the demand for gas should increase, then perhaps it would be defendant's duty to make further development, but until then the law will not require him to perform a useless act whereby neither he nor plaintiffs would be benefited.

The next ground upon which a cancellation of the lease was sought was the failure of defendant to drill offset wells. Section 3766b-4c of Baldwin's 1936 Revision of Carroll's Kentucky Statutes is section 4 of chapter 24 of the Regular Session Acts of 1920. The substance of its requirements are that when oil or gas

has been discovered on adjoining premises and the particular mineral is being marketed from a well on such adjoining premises, located within 200 feet of another leasehold for the same mineral, then the lessee of the adjoining undeveloped tract shall, within three months after written notice by his lessor, drill an offset well, but such duty does not become mandatory until after written request and the expiration of three months thereafter. Only one well was or has ever been drilled in any of the adjoining tracts of land within 200 feet of the leased tract, here involved, and it was on a tract of land owned by a man by the name of Means, and which the lessee of that tract had drilled as an offset to the one well drilled by Townsend, the original lessee in this case, on plaintiff's tract. However, that well—so drilled on the Means land as an offset one, as we have stated—was closed in and no gas was taken from it until after the filing of this action, and at about the time that defendant began to make preparation for the drilling of a second well on plaintiffs' land, but which they objected to in the manner hereinbefore stated. No written notice was ever given for defendant to drill any offset well, nor had the occasion arisen when, under the statute, they were entitled to give such notice, since the right does not accrue until the mineral is marketed, from the well on the adjoining premises; and it is conceded in this case that no product from the Means well was ever taken from it or marketed until long after this action was filed. The court, therefore, did not err in refusing to forfeit the lease upon this ground.

3. From the disposition of grounds (1) and (2), it inevitably follows that the court properly enjoined plaintiffs from interfering with defendant in his efforts to drill a second well on the leased land under the rights conferred by the Townsend lease. After a careful consideration of the entire record, we conclude that none of the grounds urged for reversal are available for that purpose, and from which it follows that the judgment should be, and it is affirmed.